UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 09-236-DLB

STAMATIOS JUSTIN SARAGAS                                                    PLAINTIFF


vs.                          **MEMORANDUM OPINION & ORDER**


MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION                                              DEFENDANT

                              *   *   *   *   *   *   *

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Stamatios Justin Saragas protectively filed an application for supplemental security income (SSI) payments on December 17, 2004.[1] (Tr. 13, 68-74). At the time of filing, Plaintiff was 22 years old and alleged a disability onset date of April 1, 2000.[2] (Doc. 69). He asserts he is disabled due to depression. (Tr. 80). His application was denied

---

[1] This is Saragas' second application for supplemental security income payments. His first application was filed on February 26, 2001 and denied by hearing decision on March 26, 2003. That decision was affirmed first by the Appeals Council on June 24, 2003, and then by this Court on September 29, 2004. *See Saragas v. Soc. Sec. Admin.*, Case No. 6:03-cv-438-GWU. The prior determination is, therefore, administratively final.

[2] Plaintiff subsequently amended his disability onset date to March 27, 2003, one day after the prior, final administrative decision. (Tr. 326).
1

initially and on reconsideration. (Tr. 50. 51). At Plaintiff's request, an administrative hearing was conducted on April 11, 2006 by Administrative Law Judge (ALJ) Frank Letchworth. (Tr. 323-371). On June 6, 2006, the ALJ ruled that Plaintiff was not disabled and therefore not entitled to SSI payments. (Tr. 13-21). The Appeals Council denied Plaintiff's request for review on January 7, 2007. (Tr. 5-7). Plaintiff appealed the denial of benefits to this Court, and on February 7, 2008, the Court reversed the administrative decision and remanded for further proceedings. *See Saragas v. Astrue*, Case No. 6:07-cv-091-WOB.

ALJ Letchworth held a second administrative hearing on August 20, 2008 (Tr. 502-551), and on March 11, 2009 again ruled that Plaintiff was not disabled. (Tr. 397-409). When the Appeals Council took no action, this decision became the final decision of the Commissioner. On July 8, 2009, Plaintiff filed the instant action. (Doc. #1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #13, 21).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance, it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to

affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999).  Moreover, even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence.  *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion.  *Smith v. Chater*, 99 F.3d 780, 781 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     The ALJ's Determination

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of his application, December 17, 2004.  (Tr. 399).  At Step 2, the ALJ found Plaintiff's depressive disorder to be a "severe" impairment within the meaning of the regulations.  (Tr. 399).  At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 19).  Specifically, the ALJ evaluated Plaintiff's nonexertional limitations under Section 12.00 (Mental Disorders) and the subsections thereunder, concluding that Plaintiff's condition did not meet or equal the requirements of any listing.  (Tr. 404).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to perform a limited range of work at all exertional levels.  (Tr. 405).  Specifically, the ALJ found that Plaintiff can perform work at all levels subject to the following nonexertional limitations: "no contact with the general public; no more than simple one to two step instructions in an object focused non-stressful work setting such as quota or production rate work; and not more than occasional casual interaction with coworkers and supervisors."  (Tr. 405).  In addition, the ALJ noted that Plaintiff "has a seriously limited but not precluded ability to sustain attention for the performance of repetitive tasks."  (Tr. 405).

As the Plaintiff had no past relevant work to which he could return, the ALJ continued to the final step of the sequential evaluation.  (Tr. 407, 408).  At Step 5, the ALJ considered the Plaintiff's age (younger individual), education (high school), work experience and RFC in conjunction with the Medical-Vocational Guidelines and testimony from a vocation expert, and concluded that there exist a significant number of jobs in the national economy–such as janitorial worker, food service industry/kitchen helper, and food preparation worker–that Plaintiff can perform despite his nonexertional limitations.  (Tr. 408).  Therefore, the ALJ found that Plaintiff has not been under a disability as defined by the Social Security Act.  (Tr. 408-09).

**C.    Analysis**

Plaintiff advances two arguments on appeal.  First, Plaintiff contends that the ALJ

4

impermissibly rejected the medical opinion of Plaintiff's treating psychiatrist Dr. Shahzad Shahmalak without giving good reasons for doing so. Second, Plaintiff asserts that the ALJ improperly weighed the medical evidence before him and "arbitrarily chose a mental RFC which is not reflective of any [medical] source." (Doc. #16 at 21). Each of these arguments will be addressed in turn.

### 1. The ALJ Met Procedural and Substantive Evidence Requirements When He Accorded Little Weight to Dr. Shahmalak's Opinions

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Shahmalak, which Plaintiff claims establish that he has a poor ability to make occupational adjustments, has little insight or awareness of social norms, and has a poor ability to understand, remember and carry out simple job instructions such that it is "unlikely that he will be able to maintain [any] type of employment." (Tr. 192). Further, Plaintiff asserts that under 20 C.F.R. § 416.927, the ALJ was required to articulate "good reasons" why Dr. Shahmalak's opinions were not accorded controlling weight.

"Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). However, such opinions do not automatically bind the ALJ, as the opinions of treating physicians are only entitled to controlling weight when they are "supported by objective medical evidence," *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003), and are uncontradicted by substantial evidence, *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987). If the ALJ finds that the treating physician's opinion fails to meet these two conditions, he may discredit that opinion, so long as he communicates a reasoned basis for doing so. *Coldiron v. Comm'r of Soc. Sec.*, No.

09-4071, 201 WL 3199693, at *6 (6th Cir. Aug. 12, 2010) (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)). "'The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).

Dr. Shahmalak, a psychiatrist, provided ongoing outpatient treatment to Plaintiff beginning May 2004. (Tr. 160-92, 273-74, 406). In November 2003, Dr. Shahmalak completed a "Mental Assessment of Ability to do Work-Related Activities," in which he indicated that Plaintiff's lack of insight and "little awareness of social norms" substantially precluded his ability to make occupational adjustments, stated that Plaintiff had a poor ability to understand, remember, and carry out simple job instructions, and noted that Plaintiff's "many missed appointment, many unpredictable responses to others" demonstrated a lack of ability to relate predictably in social situations and to be reliable.[3] (Tr. 274-74). On May 12, 2004, Dr. Shahmalak drafted a letter "To Whom It May Concern," which stated that Plaintiff was undergoing outpatient treatment for major depression and had a Global Assessment of Functioning (GAF) score of 55. (Tr. 192). In the final paragraph of the letter, Dr. Shahmalak notes that Plaintiff had previously been admitted to the psychiatric floor for treatment and opines that "[i]t is unlikely that he will be able to maintain [any] type of employment." (Tr. 192).

In the remand decision currently under review–as in the original hearing decision–the ALJ accorded little weight to Dr. Shahmalak's assessment of Plaintiff's

---

[3] It is unclear from the record whether Dr. Shahmalak was regularly treating Plaintiff at the time he rendered his 2003 assessment. Records from Baptist Regional Medical Center indicate that prior to May 2004 Plaintiff's received regular psychiatric treatment only from Dr. Samir Gupta. (Tr. 194). With the exception of the 2003 assessment, no consultation notes created before May 2004 bear Dr. Shahmalak's signature. (Tr. 160-192).

nonexertional limitations and overall ability to work:

> Also included in the record is an assessment from S. Shahmalak . . . showing poor or no ability in most areas, citing "many missed appointments . . . little/no self awareness." There are no contemporaneous treatment notes to correspond and more recent notes from Dr. Shahmalak . . . show regular therapy attendance and improving insight along with serial denials of suicidal or homicidal ideation or hallucinations. Subsequent to the submission of this assessment form, Dr. Shahmalak assigned a GAF of 55, in May 2004, totally inconsistent with the outdated assessment of November 2003. Thus, little weight is given Dr. Shahmalak's 2003 assessment.

(Tr. 407) (citations omitted). Plaintiff contends that the reasons supporting the ALJ's rejection of Dr. Shahmalak's assessment–lack of objective evidence to support his conclusions and internal inconsistency–are insufficient, and argues that Dr. Shamalak's opinions and assessed limitations are "ultimately entitled to controlling weight." (Doc. #16 at 16). The Court disagrees.

Contrary to Plaintiff's assertions, the ALJ did not commit reversible error when he gave little credence to Dr. Shahmalak's statement that "[i]t is unlikely that [Plaintiff] will be able to maintain [any] type of employment." (Tr. 192). A treating physician's opinion is only entitled to deference when it is a *medical opinion. See* 20 C.F.R. § 416.927(d). When a treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is "disabled" or "unable to work"–the opinion is not entitled to any particular weight. 20 C.F.R. § 416.927(e); Social Security Regulation 96-5p ("Medical sources often offer opinions about whether an individual . . . is "disabled" or "unable to work" . . . . Such opinion on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."). Consequently, as Dr. Shahmalak's statement regarding the likelihood of Plaintiff being able to maintain employment is merely an alternative way of

7

stating that, in his opinion, Plaintiff was "unable to work," it was properly discounted by the ALJ as an opinion on an issue reserved to the Commissioner. *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531, at *5 (6th Cir. June 7, 2010).

Likewise, the ALJ's rejection of Dr. Shahmalak's November 2003 assessment of Plaintiff's non-exertional limitations was supported by substantial evidence. As noted by the ALJ, the record does not contain treatment notes from Dr. Shahmahlak contemporaneous with his assessment. However, the record does contain notes from Plaintiff's other treating psychiatrist at Baptist Regional Medical Center, Dr. Samir Gupta, created during November 2003 which fail to support Dr. Shahmalak's restrictive assessment. (Tr. 204). In a notation dated November 14, 2003, Dr. Gupta states that Plaintiff reported "some improvement in symptoms of depression and insomnia" and "denied any suicidal ideation or homicidal ideation at this time." (Tr. 204). These notes by Dr. Gupta are similar to later notations made by Dr. Shahmalak and cited by the ALJ as failing to corroborate Dr. Shahmalak's November 2003 assessment. (Tr. 407) ("[M]ore recent notes from Dr. Shahmalak . . . show regular therapy attendance and improving insight along with serial denials of suicidal or homicidal ideation or hallucinations.").

In addition, the ALJ correctly determined that the November 2003 assessment is contradicted by the GAF score stated in Dr. Shahmalak's May 2004 letter. Although in November 2003 Dr. Shahmalak assessed Plaintiff as having poor to no ability to do work-related functions, six months later, he assessed Plaintiff as having a GAF score of 55. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (citing *Kornecky v. Comm'r of*

8

*Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006)). Consequently, a GAF score "'has no direct correlation to the severity requirements of the mental disorders listings,'" *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 133 F. App'x 684, 691-92 n.5 (11th Cir. 2005)), but is merely a vehicle which "allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individuals's mental functioning," *Kennedy*, 247 F. App'x at 766. A GAF score of 55 indicates only a moderate impairment in psychological functioning. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 (6th Cir. 2006) (explaining that a "GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflict with peers or co-workers)."). Because the GAF score in Dr. Shahmalak's 2004 letter indicates only moderate–rather than severe–symptoms, it stands in direct contradiction to his 2003 assessment.

Although Plaintiff correctly argues that an ALJ's own view of GAF scores cannot constitute sufficient evidence to overcome the deference due to a treating physician's medical opinion, *see Martin v. Comm'r of Soc. Sec.*, 61 F. App'x 191, 200 (6th Cir. 2003), he misconstrues the manner in which the ALJ used the GAF assessed by Dr. Shahmalak in 2004. Rather than using his own interpretation of Plaintiff's GAF score to supplant the opinion of Dr. Shahmalak, the ALJ used the score for the permissible purpose of testing the reliability and internal consistency of Dr. Shahmalak's assessments.

In addition, the Court notes that, although Dr. Shahmalak's 2003 restrictive assessment is arguably supported by the reports of consultative examiners Dr. Barbara Belew (Tr. 275) and Phil Pack, it is contradicted the opinions of the DDS examiners and

consultative examiner Jeanne Bennett who all assessed Plaintiff as having only mild to moderate limitations. (Tr. 153-59, 225-243). Plaintiff's daily activities and expressed goals further discredit Dr. Shahmalak's assessment: Plaintiff recently earned his GED, has taken classes at his local community college and testified before the ALJ that he is actively seeking employment. (Tr. 406). These are hardly the activities of an individual who has a poor ability to function independently. (Tr. 273).

In sum, the internal inconsistencies in Dr. Shahmalak's opinions and lack of contemporaneous medical evidence to support his restrictive assessment of Plaintiff's non-exertional limitations provide substantial evidentiary support for the ALJ's decision to accord little weight to Dr. Shahmalak's opinions. *See Coldiron*, 2010 WL 3199693, at *7. Further, because the ALJ did not err in declining to credit Dr. Shahmalak's opinions, the Court finds that the ALJ's proffered reasons for not according controlling weight to Dr. Shahmalak's assessment satisfies the "good reason" requirement contained in 20 C.F.R. § 416.927.

### 2. The ALJ Properly Weighed the Medical Evidence in the Record

Plaintiff also contends that the ALJ failed to properly weigh the medical evidence in the record and "arbitrarily chose a mental RFC which is not reflective of any [medical] source." (Doc. #16 at 21). This argument is without merit.

The Social Security Act instructs that the ALJ–not a physician–ultimately determines a claimant's RFC. 42 U.S.C. § 423(d)(5)(B); *see Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). The Sixth Circuit Court of Appeals has recognized that,

under the Social Security regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ is charged with evaluating all of the myriad evidence in the record and synthesizing it into a concise RFC. It is not necessary for the RFC to reflect the any specific medical opinion in the record, and the ALJ "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*, 2010 WL 3199693, at *3.

Here, the ALJ–as directed by this Court on remand–took care to discuss each medical source in the record, and to delineate the weight he accorded to each opinion. (Tr. 407). In addition, the ALJ examined the non-medical evidence of record including Plaintiff's daily activities and his testimony that his condition has improved despite his stoppage of all psychotropic medication. (Tr. 406). The RFC contained in the remand decision is an amalgam of the evidence in the record, and includes limitations assessed by a variety of sources including, Dr. Bennet, Mr. Pack, and the DDS examiners. Although Plaintiff is correct that the RFC assessed by the ALJ is not reflective of any particular medical source, this observation is of no moment as the RFC is supported by substantial evidence as it is reflective of several medical sources and the record as a whole.

### III. CONCLUSION

The record contains substantial evidence supporting the ALJ's decision to accord little weight to the opinions of treating psychiatrist Dr. Shahmalak, his determination of Plaintiff's RFC, and his ultimate finding that Plaintiff is not disabled. Although the record contain differing opinions as to the extent of Plaintiff's non-exertional limitations, the Court

11

finds that the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #16) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #21) is hereby **GRANTED**; and

4. A Judgment affirming this matter will be entered contemporaneously herewith.

This 30th day of August, 2010.



Signed By:
*David L. Bunning*  DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-09-236-SaragasMOO.wpd